**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **)** | |
| | **)** | |
| **v.** | **)** | **Cr. No. 19-193** |
| | **)** | **(Civ. No. 22-593)** |
| | **)** | |
| **CAMERON BASKING** | **)** | |

<u>**OPINION and ORDER**</u>

Pending before the Court is Petitioner Cameron Basking's's Motion to Vacate, Set Aside, or Correct a Sentence pursuant to 28 U.S.C. § 2255 (ECF No. 105) filed at Criminal No. 19-193 and as Civil Action No. 22-593. The government has filed a Response to the Motion. ECF No. 113. For the reasons stated herein, the Court will deny Petitioner's Motion.

**I. Background**

In March 2018, federal law enforcement agents investigating a large scale drug trafficking conspiracy in Pittsburgh, Pennsylvania, executed search warrants at multiple locations. The agents recovered fentanyl, cocaine, firearms, as well as multiple indicia of drug trafficking. Petitioner Cameron Basking was identified as an organizing leader of the conspiracy. Basking was initially charged by way of a three-count criminal complaint, filed at Criminal No. 18-336, with possession with intent to distribute heroin and fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C); possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g); and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(C)(1)(A)(i). ECF No. 1 at Cr. No. 18-336. The criminal complaint was supported by an Affidavit drafted by Lee K. Niebel, a Task Force Officer working on the investigation.

Based upon the criminal complaint, Mr. Basking stated his intent, by way of his then-defense attorney William Difenderfer, to waive prosecution by indictment and plead to an Information.  In anticipation of the waiver and plea, the government filed a three-count Information.  ECF No. 23 at Cr. No. 18-336.  On the date set for a hearing on the waiver of indictment and plea to the Information, however, Mr. Basking stated that he did not want to waive prosecution by indictment.  *See* Minute Entry, Feb. 21, 2019, at Cr. No. 18-336.

On June 25, 2019, a grand jury returned a four-count Indictment against Mr. Basking, filed at Criminal No. 19-193, charging him with conspiracy to distribute and possess with intent to distribute 400 grams or more of fentanyl and a quantity of cocaine, in violation of 18 U.S.C. § 846; possession with the intent to distribute 40 grams or more of fentanyl, and a quantity of cocaine, in violation of 21 U.S.C. §§ 841(a)(l), 841(b)(l)(B)(vi), and 841(b)(l)(C); possession of a firearm in furtherance  of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i); and possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1).  ECF No. 31.  On October 21, 2019, after a four-day jury trial, Mr. Basking was found guilty of all four counts.  On February 11, 2020, Mr. Basking was sentenced to 121 months at Counts 1 and 2, 120 months at Count 4, with both terms to be served concurrently, and 60 months at Count 3 to be served consecutively, for a total term of imprisonment of 181 months.  On February 13, 2020, Mr. Basking's trial counsel, Chris Rand Eyster, timely appealed the judgment and conviction.  The United States Court of Appeals affirmed the judgment of conviction.  *United States v. Basking*, 853 F. App'x 783, 785 (3d Cir. 2021).  Thereafter, Mr. Basking timely filed the instant motion to vacate raising issues of ineffectiveness of trial counsel.

## II.  Standard of Review

Pursuant to 28 U.S.C. § 2255, a federal prisoner may move the sentencing court to vacate, set aside, or correct a sentence:

> [U]pon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack.

28 U.S.C. § 2255(a).  As a remedy, the court must "vacate and set the judgment aside and . . . discharge the prisoner or resentence him [or her] or grant a new trial or correct the sentence as may appear appropriate."  28 U.S.C. § 2255(b).  Relief under this provision is "generally available only in 'exceptional circumstances' to protect against a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure."  *United States v. Gordon*, 979 F. Supp. 337, 339 (E.D. Pa. 1997) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962).

A district court is required to hold an evidentiary hearing on a motion to vacate sentence filed pursuant to 28 U.S.C. § 2255 unless the motion, files, and records of the case show conclusively that the movant is not entitled to relief.  *See* 28 U.S.C. § 2255(b); *United States v. Booth*, 432 F.3d 542, 545-46 (3d Cir. 2005); *United States v. Nahodil*, 36 F.3d 323, 326 (3d Cir. 1994).  Thus, if the record conclusively negates the factual predicates asserted in support of a § 2255 motion, or if the movant would not be entitled to relief as a matter of law even if the factual predicates as alleged in the motion are true, an evidentiary hearing is not required. *See Government of Virgin Islands v. Nicholas*, 759 F.2d 1073, 1075 (3d Cir. 1985).  The Court finds no need for an evidentiary hearing here, as the record conclusively establishes that Petitioner is not entitled to the relief sought in the petition.  *See* 28 U.S.C. § 2255.

3

### III. Discussion

Mr. Basking argues that he was denied effective assistance of counsel in violation of the Sixth Amendment of the Constitution.  He alleges that his defense counsel, Chris Rand Eyster, was ineffective at trial and on appeal.  Specifically, he argues that Mr. Eyster was ineffective in the following ways:

> (1) at trial, by failing to call Task Force Officer Niebel as a witness;
>
> (2) at trial, by failing to file a Motion to reveal Grand Jury Transcripts before trial;
>
> (3) on appeal, by failing to raise the issue of the government having shown the Jury inadmissible evidence; and
>
> (4) at trial, counsel "failed to do what was asked by the defendant in trial, as well as [failed to] file documents that [Mr. Basking] asked [to be filed] before trial stages."

Mot. to Vacate, at 5–9.

### A.      Applicable Law

A "petitioner claiming a deprivation of his or her Sixth Amendment right to effective assistance of counsel must show that: (1) counsel's performance was deficient; and (2) counsel's deficient performance caused the petitioner prejudice." *Ross v. District Attorney of the County of Allegheny*, 672 F.3d 198, 210 (3d Cir. 2012) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).  "To show deficient performance, 'a person challenging a conviction must show that counsel's representation fell below an objective standard of reasonableness. . . .  The challenger's burden is to show that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" *Ross*, 672 F.3d at 210 (quoting *Harrington v. Richter*, 562 U.S. 86, 104 (2011)).  "'[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'" *Hinton v. Alabama*, 571 U.S. 273, 274 (2014) (quoting *Strickland*, 466 U.S. at 690).  "Because

4

advocacy is an art and not a science, and because the adversary system requires deference to counsel's informed decisions, strategic choices must be respected . . . if they are based on professional judgment." *Strickland*, 466 U.S. at 681.  "The Supreme Court directs that our 'scrutiny of counsel's performance must be highly deferential' to avoid holding counsel incompetent because of reasonable strategic or tactical judgments which, with the benefit of tactical hindsight, might prove not to have best served his client's interests." *United States v. Loughery*, 908 F.2d 1014, 1018 (D.C.Cir.1990), quoting *Strickland*, 466 U.S. at 689.

To satisfy the "prejudice" prong, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Hinton*, 571 U.S. at 275 (quoting *Strickland*, 466 U.S. at 694); *see also Ross*, 672 F.3d at 210 (quoting *Richter*, 131 S.Ct. at 787).  The outcome in this case is Mr. Basking's conviction of guilt on four counts by a jury and/or the imposition of his sentence.  Therefore, to establish prejudice he must show that there is a reasonable probability that, but for counsel's errors, Mr. Basking would not have been found guilty, on at least one count, and/or he would have received a sentence less than 181 months' imprisonment. *See United States v. Smack*, 347 F.3d 533, 540 (3rd Cir. 2003) ("The reasonable probability of any decrease in [defendant's] sentence is sufficient to establish prejudice") citing *Glover v. United States*, 531 U.S. 198 (2001) (holding that any reduction in sentence constitutes substantial prejudice for purposes of *Strickland* analysis).

### B.    Failing to Call Task Force Officer Niebel as a Witness

Mr. Basking claims that Mr. Eyster should have called Task Force Officer Niebel during Mr. Basking's case-in-chief in order to cross-examine him about alleged discrepancies between

Niebel's Affidavit in support of the criminal complaint and the criminal complaint compared to the Indictment and Agent Piccini's post-search interview of Basking. During the government's case-in-chief, Mr. Eyster informed the Court and government counsel that Mr. Basking wanted to call Niebel as a witness. Tr. Oct. 17, 2019, at 2, ECF No. 83. Niebel had not been called as a witness by the government at this point, and since the government stated that it did not intend to call Niebel, the government objected to Mr. Basking calling Niebel solely to impeach him. The Court therefore directed Mr. Eyster to make a proffer in favor of calling Niebel. Mr. Eyster responded as follows:

> With respect to Mr. Niebel, we submit that he filed the criminal complaint in the case. There was not the same specification or characterization of the drugs in the complaint as in the indictment. There was no conspiracy charged in the complaint, and also Mr. Niebel represented in the complaint that the defendant mentioned fentanyl during his alleged statement, contrary to the assertions and the testimony of Agent Piccini.

*Id.* Thus, Mr. Basking wanted to call Niebel to explore alleged discrepancies between the original criminal complaint and the Indictment and between the description of Count One of the criminal complaint, with its reference to "fentanyl," in contrast with Agent Piccini's trial testimony, in which the Agent did not testify that Mr. Basking referred to fentanyl during his interview.

After Mr. Eyster's proffer, the government argued that the Indictment, which was issued by a grand jury after hearing supporting evidence, was the only relevant charging document, while the criminal complaint, supported by Niebel's affidavit, had become irrelevant as a charging document. The government argued that to permit cross-examination on the criminal complaint would only lead to jury confusion. The government also stated that neither charging document is evidence of the defendant's guilt.

Nonetheless, Mr. Eyster reiterated that his client maintained that he wanted to call Task Force Officer Niebel.  Mr. Eyster explained that Mr. Basking specifically wanted to "ask him about his statements in the sworn complaint as to whether the defendant mentioned  fentanyl during his purported statements to Agent Piccini at FBI headquarters on March 14, 2019." *Id.* at 5.  At this point, the government clarified that, as a factual matter, Niebel was not present at Mr. Basking's FBI interview with Agent Piccini.  Therefore, the government argued that Mr. Basking's proposed line of questioning would be inadmissible hearsay.  *Id*.  Mr. Eyster agreed with the Court's initial observation that, "there is a hearsay problem with regard to the offer that you've made with regard to calling this witness." *Id.* at 6.  Still, Mr. Eyster and Mr. Basking stood by the request to call Mr. Niebel at trial.  *Id.*  Mr. Eyster also explained that he had told Mr. Basking that there is no evidence that Niebel was present during the time Mr. Basking made his statements to Agent Piccini.  *Id.* at 5-6.

The Court deferred issuing a ruling on the request to call Niebel as a defense witness, explaining that "unless there's some change in the offer, the offer seeks to elicit hearsay testimony that would be inadmissible, but we will address that.  We're still in the government's case, so it's premature for me to issue a ruling." *Id.*  The government did not call Niebel, and Mr. Eyster did not renew the request to call Niebel during Mr. Basking's case-in-chief.  Thus, the Court was not called on to issue a ruling on the request to call Niebel as a witness.

On appeal, Mr. Basking argued that he was entitled to call Task Force Officer Niebel as a witness.  *Basking*, 853 Fed. App'x at 787.  After noting that the District Court "precluded the testimony . . because it was hearsay," the Third Circuit Court observed that Basking "did not explain then, and does not explain now, why the testimony was admissible." *Id.*  Further, the Appellate Court concluded that even if Niebel's testimony was admissible, exclusion of said

testimony at trial would be harmless error in light of the overwhelming evidence of Basking's guilt. *Id.*

Mr. Basking raised and litigated the issue of whether Task Force Officer Niebel could be called as a witness on Appeal. A section 2255 Petition generally "may not be employed to relitigate questions which were raised and considered on direct appeal." *United States v. DeRewal*, 10 F.3d 100, 105 (3d Cir. 1993). The Court will address Mr. Basking's claim as he raises a slightly distinct issue that was not before the Appeals Court: that trial counsel was ineffective for failing to call Niebel as a witness.

The Appeals Court's discussion of whether Niebel should have been called as a witness persuasively shows that Mr. Eyster could not have been ineffective, and Basking could not have been prejudiced. First, the Appeals Court concluded that not calling Niebel as a witness was not error because it would have been unsuccessful since the testimony sought was inadmissible hearsay. Second, the Appeals Court concluded that even if Niebel's testimony was admissible, the failure to call him as a witness to offer testimony would be harmless error in light of the overwhelming evidence of Basking's guilt. These two Appeals Court's rulings conclusively demonstrate that Mr. Eyster was not ineffective for failing to call Task Force Officer Niebel, for had he done so the testimony would either not have been permitted, or his testimony would have been insufficient to undermine the overwhelming evidence of guilt. Even if Mr. Eyster's performance would somehow be determined to be ineffective, for the reasons stated by the Appeals Court, Mr. Basking would be unable to show prejudice.

### C.    Failing to Request Grand Jury Transcripts Before Trial

At a pretrial status conference, Mr. Eyster requested "all grand jury transcripts that were produced in this case" and requested that such transcripts be produced "prior to the start of the

trial." Tr. Oct. 16, 2019, at 10, ECF No. 82.  While government counsel indicated he would make his best efforts to provide grand jury transcripts, he also stated that, grand jury transcripts would not be produced with respect to grand jury witnesses who would not be called to testify, as such transcripts are not discoverable as Jencks material.  *Id.* at 11.  Mr. Eyster did not file a formal Motion requesting grand jury transcripts before or during trial.  The matter of producing grand jury transcripts was not revisited for the remainder of the trial.

On appeal, Mr. Basking raised the issue that he was entitled to access  Niebel's grand jury transcripts.  *Basking*, 853 Fed. App'x at 787.  The Appeals Court noted that Mr. Basking did not file a motion seeking grand jury transcripts until after he had appealed.  The District Court denied the motion, however, the District Court "no longer had jurisdiction over the case."  *Id.* The Appeals Court explained that even if the District Court had jurisdiction to rule on the motion, "Basking had not shown a 'compelling necessity' for the transcripts or otherwise identified an applicable exception to the general rule that grand jury transcripts are not discoverable."  *Id.*  Having raised the issue of his entitlement to grand jury transcripts on appeal, Mr. Basking  is not entitled to re-litigate that narrow issue in his section 2255 petition.

As with the previous assertion of ineffectiveness of counsel, Mr. Basking cannot demonstrate that Mr. Eyster's actions were ineffective or that, if they were, that Mr. Basking was prejudiced thereby.  Mr. Basking claims Mr. Eyster was ineffective because he did not formally file a motion requesting grand jury transcripts before trial.  Mr. Eyster cannot be found ineffective for failing to file a motion for grand jury transcripts that were not discoverable (because the grand jury witnesses were not going to be called as witnesses at trial).  Similarly, Mr. Basking has not identified a compelling necessity for the grand jury transcripts.  For the

same reasons, Mr. Basking cannot show he would have been prejudiced by the failure to obtain

grand jury transcripts that he was not legally permitted to obtain.

      **D.**      **Failing to Appeal the Issue of Inadmissible Evidence Shown to the Jury**

Next, Mr. Basking claims that his counsel was ineffective for failing to appeal the issue

of an inadmissible government exhibit having been shown to the jury during the testimony of

Task Force Officer Mordaunt.  This claim addresses evidence recovered from one of the houses

subject to a search warrant, 401 West Carter Drive.  Mr. Basking had sought to suppress

evidence seized from 401 West Carter Drive from being introduced at trial, but the Court denied

his Motion.   One of the items seized from the residence was a shoebox with Mr. Basking's name

and a number written on a piece of tape on the shoebox.  This item was marked as Government

Exhibit 88 and was introduced by way of a photograph presented to Task Force Officer

Mordaunt.  Tr. Oct. 16, 2019, at 118-119.  Mordaunt identified the exhibit as a photograph of a

Timberland shoe box with a masking tape label that had the name, "Basking."  *Id.* at 119.   There

was no further testimony as to Exhibit 88.  At sidebar, Mr. Eyster explained that the masking

tape on the shoebox, also had a number next Mr. Basking's name, that Mr. Eyster explained was

a prison inmate identification number.  *Id.*  Without being requested to take any action,

government counsel immediately volunteered to withdraw the exhibit to remove any hint of

prejudice.  *Id.* at 119-120, 122.  The Court, however, noted that Exhibit 88 had not been offered

or admitted.  *Id.* at 122.  At the close of Mordaunt's direct testimony, government counsel stated,

"We would withdraw any request to move in G88."  *Id.* at 126-127.   Exhibit 88 was not

admitted, nor was it ruled "inadmissible" evidence.

Mr. Eyster's performance with respect to Exhibit 88 cannot be deemed ineffective.  Mr.

Eyster brought to the attention of the Court and government counsel that the number appearing

on the masking tape was a prison inmate number, with the implication being that the exhibit

might be prejudicial if the jury were to learn that it was a prison inmate number.  When Mr.

Eyster stated that he believed the number referred to an inmate number, government counsel

immediately stated, "I have no idea." *Id.* at 119.  Government counsel then stated that, "given

the potential for prejudice, I would move to withdraw" the exhibit.  *Id.*  Thus, Mr. Eyster raised

his concerns regarding potential prejudice to his client immediately, before any questions about

the number on the masking tape were asked.  He also ensured that the photograph of the shoebox

would not be provided to the jury during deliberations, and it also would not be shown to the jury

from that point on.  Given Mr. Eyster's actions with respect to Exhibit 88 during trial, and the

government's response, his decision not to appeal the issue was a sound strategy and not

indicative of deficient lawyering.  "There can be no Sixth Amendment deprivation of effective

counsel based on an attorney's failure to raise a meritless argument." *United States v. Saunders*,

165 F.3d 248, 253 (3d Cir. 1999).

### E.    Failing to Comply with Mr. Basking's Requests

Finally, Mr. Basking asserts a general claim that Mr. Eyster's representation was

ineffective because Mr. Eyster failed to do what Mr. Basking asked him to do pretrial and during

trial.  Mr. Basking sets forth no evidence to support his claim that counsel was ineffective for

failing to obey Mr. Basking's directives, or, that Mr. Basking was prejudiced thereby.

Conclusory allegations are not sufficient to support a petition under Section 2255.  *Blackledge v.

Allison*, 431 U.S. 63, 74 (1977).  Mr. Basking's claims are subject to dismissal because they are

vague, conclusory, and unsupported by evidence.  *United States v. Thomas*, 221 F.3d 430, 437

(3d Cir. 2000) (reiterating that "vague and conclusory allegations contained in a § 2255 petition

may be disposed of without further investigation"); *United States v. Dawson*, 857 F.2d 923, 928 (3d Cir. 1988).

       **E.**     **Certificate of Appealability**

No certificate of appealability should issue in this case. A court should issue a certificate of appealability where a petitioner makes a substantial showing of the denial of a constitutional right. 28 U.S.C. 2253(c)(2). A petitioner meets this burden by showing that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). We find that jurists of reason would not find it debatable whether Petitioner states a valid claim of the denial of a constitutional right and jurists of reason would not find it debatable whether we were correct in concluding that the petition does not present any claims upon which habeas relief may be granted. Therefore, the Court will deny a certificate of appealability.

**IV. Conclusion**

Having found no merit to Petitioner's claims of ineffectiveness of counsel, Petitioner's Motion to Vacate, Set Aside, or Correct a Sentence pursuant to 28 U.S.C. § 2255 will be denied.

Accordingly, the following order is therefore entered.

**ORDER**

For the reasons stated above, Petitioner's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 (ECF No. 105) is DENIED. The court declines to issue a Certificate of Appealability.

Dated: July 19, 2023

                                              Marilyn J. Horan
                                              United States District Court Judge

cc:    Cameron Basking
       Reg. No. 38932-068
       FCI BENNETTSVILLE
       Federal Correctional Institution
       P.O. BOX 52020
       BENNETTSVILLE, SC 29512